UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN S. COHEN,

Plaintiff,

-v-

THEODORE F. SCHROEDER,

Defendant.

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-16-16
```

No. 15-cv-6881 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Now before the Court are Defendant's (1) motion to dismiss the Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6) for failure to state a plausible claim for relief (Doc. No.

28); (2) pre-motion letter, dated February 1, 2016, requesting permission to file his contemplated

motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) (Doc. No. 37);

and (3) motion for reconsideration (Doc. No. 42) of the Court's February 11, 2016 Order (Doc.

No. 40 (the "February 11 Order")).  For the reasons set forth below, (1) Defendant's Rule 12(b)(6)

motion is DENIED, (2) Defendant's request to file a summary judgment motion is DENIED

without prejudice to renewal following the close of discovery, and (3) Defendant's motion for

reconsideration is DENIED.

I. BACKGROUND

This action stems from underlying litigation initiated by Defendant asserting

misappropriation of trade secrets and breach of fiduciary duty claims against Plaintiff and others

based on their alleged unlawful use of what Defendant insists are his own "ideas," "information

technology," and "work product."[1]   (Doc. No. 1 ("Compl.") ¶¶ 38, 48.)   After his standing to personally pursue those claims was challenged, Defendant reluctantly added two companies he previously established, including Skoop Media Associates, Inc. ("SMA"), as named plaintiffs in the underlying litigation, which is currently ongoing in New York state court (the "State Action"). (*Id.* ¶¶ 37, 41, 54–55; *see also id.*, Ex. C (Compl., dated June 20, 2013, filed in *Schroeder v. Pinterest, Inc.* (N.Y. Sup. Ct.) ("State Action Compl.")).)   Despite adding those companies as plaintiffs in the State Action, Defendant maintains that he is the owner of the information on which the claims in the State Action are based and seeks to personally recover on those claims.   (*See, e.g.*, Compl. ¶ 38; State Action Compl. at 25 ("[Defendant] originated the ideas that . . . . [Plaintiff] misappropriated without [Defendant's] knowledge and shared it with the eventual 'founders' of Pinterest.   As the originator of the concept underlying Pinterest, [Defendant] should have been fairly compensated for the use of his ideas, time, energy and financial resources.").)

On November 14, 2014, Plaintiff brought an action in the Delaware Court of Chancery to enforce his indemnification and advancement rights as a former officer and director of SMA in litigating the State Action.   (Compl. ¶¶ 68, 71.)   On June 4, 2015, the Delaware court granted summary judgment in favor of Plaintiff and found that he was entitled to advancement of his legal fees in the State Action.   (*Id.* ¶ 71.)   SMA did not appeal the Delaware court's judgment, and its right to do so expired on July 6, 2015.   (*Id.* ¶ 72.)

---

[1] The facts are drawn from the factual allegations in the Complaint and its attachments (Doc. Nos. 1–1-3), which the Court assumes to be true for the purpose of resolving Defendant's Rule 12(b)(6) motion to dismiss.   *See Safka Holdings LLC v. iPlay, Inc.*, 42 F. Supp. 3d 488, 491 (S.D.N.Y. 2013) ("On a motion to dismiss, a court may consider 'the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.'" (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))); *Merch. House Inc. v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc.*, No. 12-cv-6982 (RJS), 2013 WL 3270331, at *2 (S.D.N.Y. May 31, 2013) ("In reviewing a Rule 12(b)(6) motion . . . , a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff." (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007))).

In light of SMA's failure to respond to Plaintiff's requests for payment in the Delaware action (*id.* ¶¶ 73–76), Plaintiff commenced this action on August 31, 2015, seeking a declaratory judgment that Defendant is the alter ego of SMA and that, therefore, Defendant must be held personally liable for the Delaware judgment entered against SMA. (*See* Compl.) Specifically, the Complaint alleges that Defendant should be held personally liable for the judgment because SMA "is, and has long been, devoid of appreciable assets; and . . . for the past several years . . . has not been a real business, but is rather a prop – or mere instrumentality and alter ego – used by Defendant . . . to litigate his own personal . . . claims against [Plaintiff]" in the State Action. (*Id.* ¶¶ 2, 55.) Thereafter, Defendant filed a motion to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 28.) Defendant's motion was fully briefed as of November 18, 2015. (Doc. Nos. 28–29.)

Discovery was not stayed pending the resolution of Defendant's Rule 12(b)(6) motion and is ongoing. Thus, on February 1, 2016, Defendant filed a pre-motion letter requesting permission to file a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). (Doc. No. 37.) On February 3, 2016, Plaintiff filed a response. (Doc. No. 38.) In addition, on February 5, 2016, the parties submitted a joint letter raising a discovery dispute (Doc. No. 39), which the Court resolved in its February 11 Order (Doc. No. 40). On February 26, 2016, Defendant filed a motion for reconsideration of the February 11 Order and a supporting brief. (Doc. Nos. 42–43.) That motion was fully submitted as of March 3, 2016, when Plaintiff filed a responsive brief and accompanying declaration. (Doc. Nos. 48–49.)

## II. DEFENDANT'S MOTION TO DISMISS

### A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.

2007).  To meet this standard, a plaintiff must allege "enough facts to state a claim to relief that is

plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009).  In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual

allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  *ATSI*

*Commc'ns*, 493 F.3d at 98.  That tenet, however, "is inapplicable to legal conclusions."  *Iqbal*, 556

U.S. at 678.  Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation

of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  If the plaintiff "ha[s]

not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be

dismissed."  *Id.* at 570.

## B.  Discussion

Defendant argues that this action should be dismissed for two reasons.  First, Defendant

asserts that Plaintiff is "an officer of SMA" and therefore "is barred from piercing the corporate

veil [of the company] for his own benefit" as a matter of law.  (Doc. No. 29 at 2.)  Second,

Defendant contends that regardless of Plaintiff's status as a corporate insider, this action must still

be dismissed for failure to state a plausible claim for relief.  (*Id.*)  For the reasons set forth below,

the Court finds both arguments unavailing and concludes that Plaintiff's alter-ego claim survives

Defendant's Rule 12(b)(6) motion.

Under Delaware law – which both parties agree applies here – "a court may impose

personal liability on a corporation's owner when there is fraud or the corporation 'is in fact a mere

instrumentality or alter ego of its owner.'"  *Wilson v. Thorn Energy, LLC*, 787 F. Supp. 2d 286,

294 (S.D.N.Y. 2011) (quoting *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176

(2d Cir. 2008) (applying Delaware law)).  To establish an alter-ego claim, Delaware law requires

4

a plaintiff to show: "(1) that the business entity and its owner operated as a single economic entity and (2) that [there was] an overall element of injustice or unfairness." *NetJets Aviation, Inc.*, 537 F.3d at 174 (alteration in original) (citation omitted).   In determining whether a plaintiff has established an alter-ego claim, courts applying Delaware law generally start their analysis "with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation." *Id.* at 176–77 (citation omitted).   These factors include:

> whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*Id.* at 177 (citation omitted).   While "no single factor c[an] justify a decision to disregard the corporate entity, . . . some combination of them [i]s required, and . . . an overall element of injustice or unfairness must always be present, as well." *Harper v. Del. Valley Broads., Inc.*, 743 F. Supp. 1076, 1085 (D. Del. 1990), *aff'd*, 932 F.2d 959 (3d Cir. 1991) (citation omitted); *see also NetJets Aviation, Inc.*, 537 F.3d at 177 ("numerous factors come into play when discussing whether separate legal entities should be regarded as alter egos, . . . and the legal test for determining when a corporate form should be ignored in equity cannot be reduced to a single formula that is neither over-nor under-inclusive" (citations and alterations omitted)).   In general, the "inquiry initially focuses on whether those in control of a corporation did not treat the corporation as a distinct entity; and, if they did not, the court then seeks to evaluate the specific facts with a standard of 'fraud' or 'misuse' or some other general term of reproach in mind, . . . such as whether the corporation was used to engage in conduct that was inequitable, . . . prohibited, . . . or illegal." *NetJets Aviation, Inc.*, 537 F.3d at 177 (alterations and citations omitted).   "Simply phrased, the standard may be restated as:  whether [a company and those in control of it] operated as a single

5

economic entity such that it would be inequitable for [a] [c]ourt to uphold a legal distinction between them." *Harper*, 743 F. Supp. at 1085 (first alteration in original) (citation omitted). Moreover, a "plaintiff need not prove that the corporation was created with fraud or unfairness in mind. It is sufficient to prove that it was so used." *NetJets Aviation, Inc.*, 537 F.3d at 177 (citing examples).

Here, contrary to Defendant's assertion, Plaintiff is not barred as a matter of law from piercing the corporate veil of SMA merely because Plaintiff was a corporate officer of that company. Indeed, the relevant case law makes clear that whether an insider of a company may assert an alter-ego claim against that entity is a question of fact. For example, in *Kertesz v. Korn*, 698 F.3d 89 (2d Cir. 2012), the Second Circuit – applying Delaware law – reviewed a lower court's dismissal of an alter-ego claim brought by a former shareholder and officer of the corporate defendant. There, the lower court had dismissed the claim on the ground that the plaintiff could not simultaneously seek corporate indemnification for expenses incurred in defending against an earlier action brought by the company on the one hand, and "seek to challenge the very existence of [the company's] corporate structure" for the purpose of piercing the corporate veil on the other hand. *Id.* at 91. The Second Circuit found that the lower court's decision constituted "legal error," reasoning that it is

> not inconsistent for a party both to seek indemnification from a corporation as its officer and also to seek recovery from the personal assets of a corporate owner who abused the corporation's legal form for his own gain. *Nor would it be inconsistent for a court to hold both that a corporation was liable to indemnify an officer and that the corporation's owner was liable for the corporation's payment.* To the contrary: it would be perverse to hold that an abuse of the corporate form sufficient to defeat the corporate *privilege* of limited liability exempts the corporation from the *obligation* of a corporation to its officers.

*Id.* (first emphasis added). While the Second Circuit noted that "an officer . . . seek[ing] indemnification under [Delaware law] may face factual obstacles on the road to an alter-ego claim"

6

because, "[i]n contrast to an innocent outsider, a corporate officer is more likely to have inside knowledge of the corporation's activities," thereby "mak[ing] it more difficult for an insider to prove the overall injustice or unfairness necessary to pursue an alter-ego claim," it also clearly found that "each [such] case will turn on its specific facts," particularly "in the context of small, closely held corporations" wherein "a corporate insider may stand to lose more than an outside creditor from a majority shareholder's fraudulent abuse of the corporation's limited liability." *Id.* (citations omitted).

As *Kertesz* demonstrates, a corporate insider or shareholder of a company is not automatically barred as a matter of law from bringing an alter-ego claim against that entity. Accordingly, the Court refuses to dismiss Plaintiff's alter-ego claim in this case merely because of Plaintiff's status as an alleged corporate insider of SMA.

In addition, the Court finds that Plaintiff has sufficiently alleged both elements of his alter-ego claim for the purpose of surviving a Rule 12(b)(6) motion to dismiss. With regard to the first element – that is, "a mingling of the operations of the entity and its owner," *id.* at 92 – Plaintiff alleges in his Complaint that Defendant unilaterally revived SMA, which had otherwise been defunct and inactive for many years, for the sole purpose of using it as a vehicle through which to pursue his own claims against Plaintiff and others for violations of what Defendant asserts are his own (not SMA's) ideas and intellectual property rights. Indeed, in the State Action, while Defendant necessarily admits that SMA is "also entitled to relief for having been damaged by defendants' conduct," he is also seeking to personally recover from Plaintiff. (Compl. ¶¶ 2, 48 (Defendant asserting that he "'is claiming rights in the disputed idea and work product[,] and . . . [that he] never formally transferred the rights to his idea and work product to any other person or entity'" (quoting Defendant)), and 88.)   Moreover, the Complaint alleges that Defendant

7

personally paid SMA's back taxes in reviving it (*id.* ¶ 49 ("'All [back-owed] taxes and fees

. . . have been paid by [Defendant] to bring . . . SMA . . . to good standing with the State of

Delaware.'" (quoting Defendant))), and that other than pursuing the State Action, SMA has "no

business, no participants, and no reasonable expectation of sources of revenue or funding" (*id.* ¶

67).  Therefore, the Court finds that Plaintiff has sufficiently alleged that the post-revival version

of SMA and Defendant are essentially "a single economic entity" and that Defendant is

"operat[ing]" SMA, an otherwise defunct and insolvent entity, "in his own self-interest."  *NetJets*

*Aviation, Inc.*, 537 F.3d at 177, 184 (citation omitted); *see also id.* at 174 (noting that, in analyzing

an alter-ego claim, a court should consider, among other factors, "whether the corporation was

solvent," whether "corporate formalities were observed," and "whether, in general, the corporation

simply functioned as a facade for the dominant shareholder").

   The Court also finds that Plaintiff has alleged facts sufficient to establish the second

element of his alter-ego claim.  Specifically, the Complaint pleads facts showing that Defendant

is using SMA as a shield to establish standing in the State Action but is otherwise pursuing that

litigation for his own personal benefit. (*See, e.g.*, Compl. ¶¶ 35, 37, 40–41); *cf. Jones v. Teilborg*,

151 Ariz. 240, 247 (Ariz. Ct. App. 1986) ("The appellees cannot take advantage of the corporate

entity when convenient, and disregard it when inconvenient.").  Furthermore, the circumstances

surrounding SMA's revival, at least according to the Complaint, reflect an element of unfairness

with respect to Defendant's current use of the company.  For example, the Complaint alleges that

the "Certificate for Renewal and Revival of [SMA's] Charter" that Defendant filed with

Delaware's Secretary of State contains a false statement – specifically, that the certificate was

"'filed by authority of the duly elected directors of the corporation in accordance with the laws of

the State of Delaware,'" when in fact, "the decision to revive SMA was . . . [Defendant]'s alone,

and undertaken solely to further his own personal litigation objectives." (Compl. ¶ 44.)  In light of these allegations regarding Defendant's unilateral revival and current use of SMA, the Court finds that Plaintiff has adequately pled the unfairness element of his alter-ego claim. *Cf. K.C. Pharm., Inc. v. Strieter*, No. 05-cv-0255 (DRH), 2006 WL 741383, at *8 (S.D. Ill. Mar. 20, 2006) (concluding that the individual defendant "cannot hide behind [a] corporate shell to avoid his responsibility in the bad faith pursuit of litigation"; "if the judicial system was to allow litigants to utilize corporate shells there would be no holding proper persons to account for irresponsible activities in the litigation and the courts would be powerless to enforce the rules of engagement"); *D.O.C.C. Inc. v. Spintech Inc.*, No. 93-cv-4679 (RPP), 1994 WL 872025, at *19–20 (S.D.N.Y. Aug. 15, 1994) (finding corporate officer individually liable "along with the corporation[,] for the payment of attorney fees, costs, and expenses" for "filing and maintaining . . . a bad faith lawsuit"). Accordingly, the Court finds that Plaintiff's alter-ego claim survives Defendant's motion to dismiss for failure to state a plausible claim for relief.

### III. DEFENDANT'S REQUEST TO FILE A SUMMARY JUDGMENT MOTION

As noted above, on February 1, 2016, Defendant filed a pre-motion letter requesting permission to file a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). (Doc. No. 37.) Defendant's contemplated motion seeks to have this case dismissed on one of the same grounds Defendant previously raised in his Rule 12(b)(6) motion – specifically, that Plaintiff's insider status bars Plaintiff, as a matter of law, from pursuing an alter-ego claim to pierce the corporate veil of SMA. (*See id.*) While Defendant's Rule 12(b)(6) motion focused on Plaintiff's alleged status as a corporate officer of SMA, Defendant now claims in his recent pre-motion letter that, on January 12, 2016, Plaintiff admitted in his deposition in the State Action that "he was a shareholder of SMA." (*Id.* at 2.) As a result, Defendant argues that Plaintiff's shareholder status bars Plaintiff from pursuing this action to pierce the corporate veil of SMA,

thereby entitling Defendant to summary judgment pursuant to Rule 56(a). (*Id.*)  For the reasons set forth below, the Court finds that Defendant's contemplated summary judgment motion is premature and therefore denies Defendant's request to file it now.

It is well-established that a district court may deny a summary judgment motion "as premature" when it is brought by a defendant prior to the close of discovery. *Coggins v. Cty. of Nassau*, No. 07-cv-3624 (JFB) (AKT), 2008 WL 2522501, at *5 (E.D.N.Y. June 20, 2008) ("[C]ourts routinely deny summary judgment motions as premature when they are raised [before a] plaintiff[] [is] provided with the opportunity for discovery." (citing examples)), *aff'd in part, appeal dismissed in part and remanded sub nom, Coggins v. Buonora*, 362 F. App'x 224 (2d Cir. 2010); *e.g.*, *Safeco Ins. Co. of Am. v. Discover Prop. & Cas. Ins. Co.*, No. 05-cv-8625 (DC), 2008 WL 318314, at *4 (S.D.N.Y. Feb. 6, 2008) (denying the "parties' pending cross-motions for summary judgment . . . as premature and without prejudice to refiling after discovery closes"). Here, in light of the fact that discovery is ongoing and is not scheduled to close until April 22, 2016, the Court finds that Defendant's request to file his contemplated motion for summary judgment is premature.  Therefore, the Court DENIES this request without prejudice to renewal after the close of discovery.  As a reminder, pursuant to the Court's March 2, 2016 Order, if the parties wish to file post-discovery motions, they shall submit pre-motion letters to the Court by April 22, 2016; the Court will then address the parties' contemplated motions (if any) at the post-discovery conference currently scheduled for May 6, 2016.  (Doc. No. 45.)

## IV. DEFENDANT'S MOTION FOR RECONSIDERATION

Finally, the Court turns to Defendant's motion for reconsideration (Doc. No. 42) of the Court's ruling in its February 11 Order resolving the parties' dispute about Defendant's obligation to produce discovery responsive to Plaintiff's request for certain communications involving

Defendant and other alleged shareholders of SMA. For the following reasons, Defendant's motion is denied.

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.* Whether reconsideration is appropriate is "committed to the sound discretion of the district judge." *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983).

Here, Defendant seeks reconsideration of the Court's February 11 Order to the extent that the Order compelled Defendant to produce documents currently being withheld on his privilege log. (Doc. No. 43.) In fact, Defendant acknowledges that his reconsideration motion is "more akin to one seeking clarification" with respect to whether the February 11 Order compels Defendant to produce documents he is withholding on privilege grounds "properly raised" in Defendant's privilege log "in accordance [with] the [f]ederal [discovery] [r]ules." (*Id.* at 1–2.) Having reviewed Defendant's motion for reconsideration and the relevant submissions made by the parties, the Court denies this motion for the simple reason that the February 11 Order did not direct Defendant to produce *all* communications responsive to Plaintiff's discovery request regardless of whether such communications are privileged. Rather, the February 11 Order merely addressed the issue that was presented to the Court by the parties in their February 5, 2016 joint letter (Doc. No. 39) – specifically, whether Defendant was entitled to broadly object to Plaintiff's discovery request for certain communications on the ground that such communications are protected by a common interest privilege. Significantly, in asking the Court to resolve that

11

discovery dispute, the parties did not refer to any specific documents or otherwise ask the Court to rule on Defendant's privilege log.  (*See id.*)  Thus, the February 11 Order determined that Defendant could not withhold responsive communications merely by claiming that they are protected by a common interest privilege; the Order did not decide anything with respect to whether Defendant had properly withheld specific documents listed on his privilege log.  Since the February 11 Order does not compel Defendant to produce documents on his privilege log, the Court concludes that Defendant's motion is essentially moot and, in any event, fails to raise any new or overlooked facts or controlling law warranting the Court's reconsideration of its February 11 Order.  Accordingly, the Court denies Defendant's motion for reconsideration.

To be sure, Defendant's reconsideration motion and the parties' related submissions clearly show that there is a discovery dispute as to whether the documents on Defendant's privilege log are in fact privileged.  However, that dispute, albeit related, is simply not the one that the Court addressed in its February 11 Order.  (*Compare* Doc. No. 39 (February 5 letter) at 4 (asking Court to determine whether Defendant is entitled to generally withhold "the communications surrounding the Agreement" on the ground that "[t]he common interest doctrine protects [those communications] from disclosure"), *with* Doc. No. 43 (Defendant's Brief in Support of Motion for Reconsideration) (asking the Court to find that the documents listed on Defendant's privilege log are each protected pursuant to the attorney-client privilege and common interest doctrine).)  Therefore, to the extent that Plaintiff believes he is entitled to discovery of specific documents listed on Defendant's privilege log, he must separately present that dispute to the Court in a joint letter or motion to compel pursuant to Rule 2.G of the Court's Individual Rules and Practices and Federal Rule of Civil Procedure 37(a).

V. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss the Complaint pursuant to Rule 12(b)(6) is DENIED; Defendant's request to file his contemplated motion for summary judgment is DENIED without prejudice to renewal following the close of discovery; and Defendant's motion for reconsideration of the Court's February 11 Order is DENIED.

The Clerk of the Court is respectfully directed to terminate the motions pending at docket entries 28, 37, and 42.

SO ORDERED.

Dated:      March 15, 2016
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE