**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| BRIAN S. COHEN,<br>　　　　　Plaintiff,<br><br>　　v.<br><br>THEODORE F. SCHROEDER,<br>　　　　　Defendant. | No. 15-cv-6881 (RJS) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THEODORE F. SCHROEDER'S MOTION FOR SUMMARY JUDGMENT

Sidney S. Liebesman
David Dormont (Pro Hac Vice)
**MONTGOMERY McCRACKEN**
**WALKER & RHOADS LLP**
437 Madison Avenue, 29th Fl.
New York, NY 10022
Tel: (212) 867-9500

*Counsel to Defendant, Theodore F. Schroeder*

4130345v1

## TABLE OF CONTENTS

Page No.

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     UNDISPUTED FACTS ........................................................................... 1

    A.    Skoop Media Associates, Inc. ...................................................... 1

    B.    The Related Legal Proceedings .................................................... 5

    C.    Cohen's Complaint against Schroeder ........................................... 7

III.    ARGUMENT ....................................................................................... 15

    A.    Legal Standard for Summary Judgment .......................................... 15

    B.    Law Supporting Summary Judgment .............................................. 16

IV.     CONCLUSION ................................................................................... 21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)................................................................................................16

*Binder & Binder PC v. Barnhart,*
481 F.3d 141 (2d Cir. 2007)....................................................................................16

*Carotek, Inc. v. Kobayashi Ventures, LLC,*
875 F. Supp.2d 313 (S.D.N.Y. 2012).....................................................................17

*Cohen v. Schroeder,*
No. 15-cv-6881, Opinion and Order (D.E. 54)
(S.D.N.Y. March 15, 2016) (Sullivan, J.)...................................................16, 17-18

*D'Amico v. City of New York,*
132 F.3d 145 (2d Cir. 1998)....................................................................................16

*Estate of Gustafson v. Target Corp.,*
819 F.3d 673 (2d Cir. 2016)....................................................................................16

*Kerzer v. Kingly Mfg.,*
156 F.3d 396 (2d Cir. 1998)....................................................................................16

*RSL Communications PLC v. Bildirici,*
649 F. Supp.2d 184 (S.D.N.Y. 2009) (Sullivan, J.)...............................................16

*Schoonejongen v. Cucriss-Wright Corp.,*
143 F.3d 120 (3d Cir. 1998)....................................................................................19

*Trevino v. Merscorp, Inc.,*
583 F. Supp.2d 521 (D. Del. 2008).................................................................8, 20, 21

*Wellington Shields & Co., LLC v. Breakwater Investment Management LLC,*
No. 14-cv-7529 (S.D.N.Y. March 18, 2016) (Sullivan, J.)....................................15

*Weyant v. Okst,*
101 F.3d 845 (2d Cir. 1996)....................................................................................15

**Other Authorities**

Fed. R. Civ. P. 56....................................................................................................1

## I.    PRELIMINARY STATEMENT

Defendant Theodore F. Schroeder ("Defendant" or "Schroeder") moves for summary judgment against Plaintiff Brian S. Cohen ("Plaintiff" or "Cohen").  Cohen cannot establish a genuine issue of material fact sufficient to grant the extraordinary remedy of piercing Skoop Media Associates, Inc.' corporate veil such that the Defendant should be personally liable for any Skoop Media Associates, Inc. debt.  Therefore, summary judgment in Schroeder's favor is required.

## II.   UNDISPUTED FACTS[1]

### A.    Skoop Media Associates, Inc.

Plaintiff's suit seeks to pierce the corporate veil of a small, non-public, start-up company called Skoop Media Associates, Inc. ("SMA," "Skoop" or the "Company").  *See* Compl. ¶93. On June 29, 2007, Plaintiff, along with three other individuals (Defendant, William Bocra ("Bocra") and Brandon Stroy ("Stroy")), collectively caused SMA to be formed and incorporated under the laws of the State of Delaware.  *See* Compl. ¶ 17.  Cohen, Defendant, Bocra and Stroy were Skoop's sole shareholders.[2]  Ex. 1, Cohen January 12, 2016 Dep., p. 229:3-7.[3]  The four

---

[1] As required under Fed. R. Civ. P. 56, Defendant presents the facts in the light most favorable to Plaintiff.  Defendant does so without waiving its right at trial or in other related proceeding to argue the facts in the light most favorable to Defendant.

[2] Schroeder owned 46% of Skoop, while Cohen, Bocra and Stroy each had an 18% interest.  Ex. 3, Bocra May 19, 2016 Dep., p. 80:24-81:24; *see also*, Ex. 9 (Ex. Cohen 11), p. 2-3; Ex. 14 (Ex. Cohen 47), p. 2, ¶B.

[3] The exhibits cited are attached to the Declaration Under Penalty of Perjury of David Dormont, Esquire in Support of Defendant's Motion for Summary Judgment, which Declaration is being filed contemporaneously with this Memorandum and incorporated by reference herein.

were also the Company's sole directors.  Ex. 2, Cohen May 16, 2016 Dep., p. 35:17-19, 202:5-7; Ex. 3, Bocra May 19, 2016 Dep., p. 32:23-33:9, 38:3-6; 74:20-75:3.  Plaintiff was SMA's Chief Executive Officer and Chairman of the Board.  Compl. ¶ 17; Ex. 1, Cohen January 12, 2016 Dep., p. 81:12-14, 200:19-23.  Defendant was SMA's President and Chief Technology Officer.  Ex. 16 (Cohen 55); Ex. 5, Schroeder January 20, 2016 Dep., p. 18:25-19:18; Ex. 2, Cohen May 16, 2016 Dep., p. 231:2-4.  Bocra was SMA's Chief Operating Officer.[4]  Ex. 3, Bocra May 19, 2016 Dep., p. 32:23-33:3; Ex. 2, Cohen May 16, 2016 Dep., p. 236:16-18.  In connection with its formation, the Company secured corporate counsel in Delaware and adopted By-Laws.  Ex. 6, Schroeder May 20, 2016 Dep., p. 111:14-21; Ex. 3, Bocra May 19, 2016 Dep., p. 80:16-23;  Ex. 23 (PLCOZEN070-83).

Skoop's purpose was to further develop ideas for a visual curation website involving browsing and the sharing of ideas and interests.  *See* Ex. 5, Schroeder January 20, 2016 Dep., p. 255:14-256:9.  In late 2007, after several months of development, personality conflicts developed such the Company deadlocked.  Ex. 6, Schroeder May 20, 2016 Dep., p. 107:10-19.  As a result of the deadlock, no further steps were taken to develop the Company's website.  *Id.*

In 2008, Skoop's principals tried to work out an agreement to liquidate the Company.  *See* Ex. 14 (Cohen 47) (Bocra March 24, 2008 e-mail to Schroeder).  The draft agreement recognized the importance of SMA's intellectual property and prohibited the principals from assisting a business with the same purposes, goals and aims of Skoop for a period of three years:

Section 4.  <u>Use of Trade Secrets and Related Matters.</u>

(a) The Parties shall not develop, pursue or otherwise work on or cause or assist another to  develop,  pursue  or  otherwise  work  on  an  entity  or  business

---

[4] As chief operating officer, Bocra, rather than Schroder, was responsible for the Company's books and records.  Ex. 2, Cohen May 16, 2016 Dep., p. 230:18-19, 237:6-24.

> reasonably related to the purposes, goals, aims and business models of Rendezvoo[5] or Skoopwire for a period of three years from the date hereof, including but not limited to any Internet-enabled newswire for new products, services and ideas. Notwithstanding anything in this Agreement, the passive investment in any business or project by means of membership in a fund or fund-like organization or the use of any general computer programming knowledge gained from the participation in Rendezvoo or Skoopwire shall not be grounds for breach of this <u>Section 4(a)</u>.

Ex. 14 (Ex. Cohen 47), p. PL06109 (emphasis in the original). Cohen described the restrictions contained in provisions of Section 4(a) as covering "The whole kitchen sink." Ex. 2, Cohen May 16, 2016 Dep., p. 282:2-7. Cohen, however, objected to one part of the restriction, as he wanted his non-profit work to fall within the exemption provided for in the second sentence of Section 4(a). Ex. 15 (Ex. Cohen 49), p. 3. Schroeder, Bocra and Stroy agreed to modify this section to allow Cohen an exemption for "participation in any 501(c)(3) non-profit organization *in which Cohen derives no compensation*." *Id.*, at p. 2 (emphasis added). Cohen, however, balked at this modification insisting, "My non-profit work should have no restrictions." *Id.* at p. 1. The parties never reached an agreement on the terms of the liquidation agreement. Ex. 5, Schroeder January 20, 2016 Dep., p. 131:14-18.

   As a result of the conflict and deadlock between the principals, Cohen left SMA in 2008. Ex. 2, Cohen May 16, 2016 Dep., p. 224:12-225:5. Cohen admitted that after he left the Company, the remaining directors (i.e. Schroeder, Bocra and Stroy) were free to "do anything they wanted to do" with Skoop, including commencing suit on SMA's behalf:

   [Q.]   Now, after you left Skoop, who was in charge of the company?

---

[5] Rendezvoo was an internet company owned by Schroeder, Bocra and Stroy. In May 2007, Cohen later agreed to join Rendezvoo as an owner and chairman. *See* Ex. 9 (Ex. Cohen 11), p. 2-3. Rendezvoo was "a website where people meet to share opinions, views, items and tastes on a variety of subjects – products, services, events, politics, economics – nearly anything of human interest." Ex. 18 (Ex. Schroeder 1), p. 2. Cohen met Schroeder, Bocra and Stroy as a result of a funding pitch made by Rendezvoo that Cohen attended. Compl. ¶ 13.

A.   I have no idea.

Q.   Were Mr. Bocra, Mr. Stroy, and Mr. Schroeder free to run the company after you left?

MR. FISCHER:  Object to form.

A.   I have no idea.

Q.   Well, in your opinion, *did they have the right to continue the business?*

A.   *They could do whatever they want.*

Q.   And they could go out and raise new money, correct?

MR. FISCHER:  Objection to form.

A.   They could do anything they want.

Q.   Okay.

And Skoop could have retained legal counsel, correct?

A.   They could have done anything they wanted.

Q.   Okay.

*And after you left the company, Skoop had the right to bring a suit to protect its interest, correct?*

A.   They could have done --

MR. FISCHER:  Object to form.

A.   *They could do anything they wanted to do.*

Q.   *And after you left Skoop, the remaining directors had a right to make business decisions on behalf of the company, correct?*

MR. FISCHER:  Object to form.

A.   *They could do anything they wanted to do.*

Ex. 2, Cohen May 16, 2016 Dep., p. 225:15-226:22 (emphasis added).

In late 2011, Schroeder saw his wife using Pinterest.  Ex. 4, Colleen Schroeder Dep., p.

78:25-79:6.  He became upset, because Pinterest implemented the ideas that he developed for

Rendezvoo and Skoop.  *Id.* at p. 78:25-80:13; Ex. 5, Schroeder January 20, 2016 Dep., p. 368:12-369:10.  At the time, Schroeder did not know of Cohen's involvement with Pinterest. *See* Ex. 5, Schroeder January 20, 2016 Dep., p. 368:12-369:14.  In March 2012, Schroeder learned that Cohen held himself out as Pinterest's first investor. Ex. 22 (PL07698); *see also*, Ex. 8 (Ex. Cohen 2) (Mashable's article entitled "Pinterest's First Investor Explains the Secret to the Startup's Success."); Ex. 10 (Ex. Cohen 36), ¶ 31 ("Mr. Cohen was Pinterest's first investor"); Ex. 7, Stroy May 24, 2016 Dep., p. 33:9-14.  Schroeder promptly shared this information with Stroy. Ex. 22 (PL07698).

Upon learning of Cohen's involvement with Pinterest, Schroeder and Stroy concluded that Cohen had stolen their ideas and improperly transferred that intellectual property to Pinterest.  Ex. 7, Stroy May 24, 2016 Dep., p. 34:1-4.  Upon "learn[ing] about Pinterest and about Mr. Cohen," Schroeder and Stroy consulted with SMA's corporate counsel about what to do.  *Id.* at 35:5-9.

## B.     The Related Legal Proceedings

In December 2012, Schroeder sued Cohen and Pinterest in the United States District Court for the Southern District of New York in his own name for misappropriation and breach of fiduciary duty in connection with Cohen's theft of intellectual property and the transmission of those ideas to Pinterest. *Schroeder v. Cohen, et al.*, S.D.N.Y. 12-CV-9413.  *See* Ex. Cohen 37. Stroy knew the lawsuit against Cohen would be filed, having discussed the suit with Schroeder and counsel. Ex. 7, Stroy May 24, 2016 Dep., p. 30:6-9; 32:17-33:5.  Stroy reviewed a draft the complaint before it was filed.  *Id.* at 36:6-9.  Stroy also approved of the filing of the original complaint.  *Id.* at 37:8-20.

Bocra was also notified of the lawsuit in late 2012 or the beginning of 2013 by SMA's corporate counsel. Ex. 3, Bocra May 19, 2016 Dep., p. 29:18-24, 46:3-11. In January 2013, Bocra also had meet with SMA's corporate counsel and counsel from Montgomery McCracken about the suit. Ex. 6, Schroeder May 20, 2016 Dep., p. 13:13-18. Bocra testified that Schroeder was authorized as an officer of the Company to have Skoop file its suit against Cohen. Ex. 3, Bocra May 19, 2016 Dep., p. 58:21-59:3. If Bocra had disagreed with the Complaint, he would have voiced his opinion. *Id.* at 62:14-16.

On February 12, 2013, Cohen, through counsel, wrote to the court to request "a pre-motion hearing conference to address his anticipated motion to dismiss plaintiff Theodore F. Schroeder's Complaint." Ex. 13 (Ex. Cohen 44). **Cohen's first argument was that Schroeder did not have standing or the legal capacity to sue, only Rendezvoo or SMA did**:

> First, Mr. Schroeder lacks standing and legal capacity to bring these claims. *If an injury has been suffered, it is a corporate entity*, and not Schroeder individually.

Ex. 13 (Ex. Cohen 44), p. 1 (emphasis added); see also, *id.*, p. 3. Cohen also testified that if there is an injury arising out of the suit against him, it originally belonged to Skoop. Ex. 2, Cohen May 16, 2016 Dep., p. 113:14-114:16. Eight days later, on February 20, 2013, Skoop's counsel wrote to the Court and advised that an Amended Complaint would be filed adding Skoop as an additional plaintiff. Ex. 19 (P-26). Thereafter, on February 27, 2013, Schroeder, Rendzvoo and Skoop filed an Amended Complaint against Cohen. *See* Ex. 12 (Ex. Cohen 38). Like the original Complaint, the Amended Complaint alleged misappropriation and breach of fiduciary duty in connection with Cohen's theft of intellectual property and the transmission of those ideas to Pinterest. *Id.* Now, however, Rendezvoo and SMA asserted they were also injured as a result of the Cohen's wrongful conduct. *Id.*; *see also*, Ex. 3, Bocra May 19, 2016 Dep., p. 48:8-11.

4130345v1

The federal court dismissed the Amended Complaint *sua sponte* the following month for lack of subject matter jurisdiction (the addition of Rendezvoo and Skoop destroyed diversity). *See* Ex. 3, Bocra May 19, 2016 Dep., p. 76:13-25.   Thereafter, on June 20, 2013, Schroeder, Rendezvoo and Skoop filed suit against Cohen in the Supreme Court of New York County, in a case captioned *Schroeder, et al. v. Brian S. Cohen, et al.*, Index No. 652183/2013 (the "Pinterest Litigation").   Ex. 21 (P-84).   The action remains pending in state court.   Any recovery in the Pinterest Litigation will ultimately inure to the benefit of Schroeder, Bocra and Stroy.[6]   Ex. 17 (Ex. Bocra 3)  (Agreement of Interest in Lawsuit), ¶ 1.

In November 2014, Cohen filed an action against Skoop in the Delaware Court of Chancery (the "Delaware Action") pursuant to the terms of SMA's articles of incorporation, seeking advancement from Skoop for Cohen's attorneys' fees and other defense costs in defending against the Pinterest Litigation.   Compl., ¶68; Ex. 10 (Ex. Cohen 36) (Delaware Compl.).   Cohen filed the Delaware Action despite knowing that Skoop had no money or insurance with which to pay any judgment he obtained. *See* Compl., ¶ 2; Ex. 10 (Ex. Cohen 36), ¶63.   Rather, he filed suit "fully intend[ing] to enforce expeditiously, any judgment entered against SMA against Mr. Schroeder personally." Ex. 10 (Ex. Cohen 36), ¶64.   On June 4, 2015, Plaintiff obtained summary judgment in the Delaware Action for approximately $603,000 (the "Delaware Judgment").   Compl. ¶ 71.

## C.   Cohen's Complaint against Schroeder

On August 31, 2015, Cohen then filed the present action against only Schroeder personally alleging just one cause of action – a claim seeking a declaratory judgment that SMA

---

[6] Negotiations between the parties determined the ultimate percentage recovery.   Ex. 3, Bocra May 19, 2016 Dep., p. 144:24-145:5.

was Defendant's alter ego.  *See* Compl.  Cohen testified that he is the only person with knowledge of the facts supporting his claims against Schroeder.[7]  Ex. 2, Cohen May 16, 2016 Dep., pp. 11:14-18, 12:20-25.

Cohen admitted that Skoop was "a real legal entity" when he sued it and that it remains a legal entity today.[8]  Ex. 2, Cohen May 16, 2016 Dep., p. 30:21-24, 31:14-16.  Cohen failed to testify that that Skoop was inadequately capitalized when it commenced its suit against him.[9]  Specifically, Cohen could not identify (1) the amount of money he believed Skoop needed to

---

[7]   Cohen testified as follows concerning who had knowledge of the facts supporting his claim:

Q.   Who else has facts about the case other than you, personally?

MR. FISCHER:  Object to form.

A.   I don't know who else may have facts about the case.

* * *

Q.   Other than yourself, can you identify any other individuals who have knowledge of the facts supporting your claim against Mr. Schroeder?

MR. FISCHER:  Object to form.  Asked and answered.

A.   No

Ex. 2, Cohen May 16, 2016 Dep., pp. 11:14-18, 12:20-25.

[8]  To buttress his claim for veil piercing, Cohen's Complaint alleged that Skoop failed to follow a variety of corporate formalities.  *See* Compl. ¶81-89.  But even Cohen admits that many start-up companies, including his own companies, do not follow many of these formalities either.  *See* Ex. 2, Cohen May 16, 2016 Dep., p. 161:18-165:10 (start-up company's Cohen has invested in), 349:9-350:23 (Launch.It and Pinterest), 354:13-25 (iFluence).

[9]"[A] shortage of capital, as with all the factors of the alter ego doctrine, is not per se a reason to pierce the corporate veil.... Rather, **the inquiry into corporate capitalization is most relevant for the inference it provides into whether the corporation was established to defraud its creditors or other improper purpose such as avoiding the risks known to be attendant to a type of business.**"  *Trevino v. Merscorp, Inc.*, 583 F. Supp.2d 521, 530 (D. Del. 2008), quoting *Trustees of Nat. Elevator Industry Pension, Health Benefit and Educational Funds v. Lutyk,* 332 F.3d 188, 197 (3d Cir. 2003) (emphasis added).

Page **8** of **21**

before it could commence suit against him or (2) how that amount of money would be determined:

> Q.   **How much money did Skoop need to have before it could start a suit against you?**
>
> MR. FISCHER:  Object to form.
>
> A.   **I have absolutely no idea.**
>
> Q.   **How would you determine how much money Skoop needed before it could file suit?**
>
> MR. FISCHER:  Object to form.
>
> A.   **I don't know.**

Ex. 2, Cohen May 16, 2016 Dep., p. 301:11-18 (emphasis added).[10]

---

[10]   Cohen also conceded that whether a company is adequately capitalized cannot easily be determined:

> Q.   Well, **what does adequately capitalized mean to you?**
>
> MR. FISCHER:  Object to form.
>
> A.   **It's a very nebulous term.**
>
> Q.   Okay.
>
> **And how can you determine whether a company is adequately capitalized?**
>
> MR. FISCHER:  Object to form.
>
> A.   **You really can't.**  It's very opinionated.
>
> Q.   Depending on what?
>
> MR. FISCHER:  Object to form.
>
> A.   Whoever is running the company and whoever is invested in it.

When asked why he sued only Schroeder and none of Skoop's other directors, Cohen testified the reason was because Schroeder sued him:

> Q.    Why did you decide only to sue Mr. Schroeder and none of the other directors of Skoop for Skoop's debts?
>
> A.    Again, because *he* sued me.

Ex. 2, Cohen May 16, 2016 Dep., p. 45:21-46:5 (emphasis added).

Cohen asserts that he sued Schroeder personally, because when Skoop did not pay the Delaware Judgment, "we learned that there was some unusual activities, call it sham, issues, that related to the way Mr. Schroeder was going about the lawsuit." Ex. 2, Cohen May 16, 2016 Dep., p. 5:16-24. Cohen could only identify three things when asked to name this supposedly "unusual activity" which formed the basis for his Complaint. *Id.* at 6:25-7:21. First, Cohen alleged that Schroeder paid Skoop's taxes. *Id.* at p. 7:1-6. Second, Cohen alleges that the "big one" was that Schroeder claimed there was an authorization to sue on behalf of Skoop, when there was none.[11] *Id.* at p. 7:10-13. Third, Cohen alleged that there were signatures or names on

---

> Q.    Can two people look at the same company and one in good faith determine that it's adequately capitalized and the other one in good faith determine that it's not adequately capitalized?
>
> A.    Absolutely.

Ex. 2, Cohen May 16, 2016 Dep., p. 161:22-162:15 (emphasis added).

[11]    Cohen's testified as follows:

> Q.    What other unusual activities did Mr. Schroeder undertake that you are complaining of?
>
> A.    Authorization to sue, there was none. That was a big one. He didn't have authorization.

Ex. 2, Cohen May 16, 2016 Dep., p. 7:10-13.

4130345v1

corporate forms without authorization. *Id.* at 7:14-19. Not only do these three allegations, if true, fail to constitute activity that would sufficient evidence to allow the piercing of Skoop's corporate veil, but the evidence does not support Cohen's allegations.

First, Schroeder did not personally pay Skoop's taxes to revive Skoop. Skoop's taxes were paid for by the law firm of its corporate counsel.[12] Ex. 7, Stroy May 24, 2016 Dep., p. 111:11-112:2; Ex. 3, Bocra May 19, 2016 Dep., p. 40:16-41:13; *see also*, Ex. 6 Schroeder May 20, 2016 Dep. p. 111:3-16. Even Cohen conceded that he has seen no specific evidence that Schroeder paid Skoop's taxes.[13] Ex. 2, Cohen May 16, 2016 Dep., p. 16:9-17:16.

Second, Schroeder, as Skoop's President, had the inherent authority to direct a suit against Cohen on SMA's behalf for the theft of its intellectual property. Under SMA's By-Laws, the officers "shall each have such powers and perform such duties in the management of the affairs, property and business of the Corporation, subject to the control of and limitation by the Board, as generally pertain to their respective offices, …" Ex. 23, SMA's By-Laws, §4.02 (PLCOZEN070, PLCOZEN080). Cohen admitted that:

---

[12] Bocra testified that either he personally paid Skoop's Delaware taxes in 2008 or one of the other individuals did. Ex. 3, Bocra May 19, 2016 Dep., p. 41:14-20. It is not uncommon for Delaware corporations to become tax delinquencies when they are not actively involved in business, and then later clearing up that delinquency when needed to continue business operations. *See Id.* at 72:16-73:5.

[13] On March 22, 2013, counsel wrote a letter to the Court in connection with the original action. In the letter, counsel correctly advised the Court that for a time Rendezvoo and Skoop's taxes and fees owed to the State of Delaware were not paid, but that subsequently these sums were paid and both companies were returned to good standing. Ex. 24, p. 4. The letter, however, mistakenly stated that "All taxes and fees have since been paid by Schroeder …" This was an error.

- Skoop's Board of Directors never controlled or limited the powers of its president.[14] Ex. 2, Cohen May 16, 2016 Dep., p. 236:12-15;

- As president, Schroeder had a duty to act in the best interest of the Company.  Ex. 2, Cohen May 16, 2016 Dep., p. 240:11-16.

- Schroeder, as Skoop's president, also had a duty to protect Skoop's intellectual property and assets. Ex. 2, Cohen May 16, 2016 Dep., p. 305:16-25.

Moreover, as detailed above, SMA's institution of suit against Cohen was approved in advanced by Stroy.[15] Ex. 7, Stroy May 24, 2016 Dep., p. 36:6-9; 37:8-20.  On March 20, 2013, Stroy also provided his written consent and authorization for SMA's suit against Cohen.[16] Ex. 20, P-83.

---

[14] Cohen testified that when you are the president of a small company "you have everything on your shoulders." Ex. 2, Cohen May 16, 2016 Dep., p. 155:25-156:11.

[15] Cohen failed to testify that Skoop's president lacked the power to authorize the commencement of a lawsuit on the Company's behalf.  Instead, he testified that he did not know who had that authority:

> Q.    *And did Skoop's president have the power to authorize a suit on the company's behalf?*
>
> MR. FISCHER:  Objection to form.
>
> A.    *I don't know.*
>
> Q.    *Do you know who had authority on Skoop's behalf to authorize a lawsuit on the company's behalf?*
>
> MR. FISCHER:  Object to form.
>
> A.    *I don't know.*
>
> Q.    *Is it your position that the president of Skoop did not have the power to authorize a lawsuit on the company's behalf?*
>
> MR. FISCHER:  Object to form.  Asked and answered.
>
> A.    *I don't know.*

Ex. 2, Cohen May 16, 2016 Dep., p. 306:2-16 (emphasis added).

[16] Schroeder and Stroy represented two-thirds of SMA's disinterested directors and 64% of the shares of the Company. Ex. 6, Schroeder May 20, 2016 Dep., p. 108:19-23.

4130345v1

Finally, to the extent, if any, that SMA's lawsuit was not properly authorized, in October 2014 the disinterested directors (i.e. all the directors except for Cohen) formally ratified the actions taken to pursue the lawsuit against Cohen.[17]   Ex. 17 (Ex. Bocra 3) (Agreement of Interest in Lawsuit), ¶ 4; Ex. 3, Bocra May 19, 2016 Dep., p. 156:12-19.

Third, Cohen could not identify either specifically or generally the documents that Schroeder allegedly signed without authorization or even when the documents were allegedly signed:

> Q.   Now, you said that Mr. Schroeder signed documents without authorization.  Do you recall that?
>
> A.   Uh-huh.
>
> Q.   Is that a yes?
>
> A.   Yes.
>
> Q.   **What documents did Mr. Schroeder sign without authorization?**
>
> A.   I don't -- **I can't say specifically**.
>
> Q.   **Can you tell me generally?**
>
> A.   **No**.

---

[17] Specifically, on October 6, 2014, the disinterested directors agreed as follows:

> 4. **Ratification. Any actions taken by the Principals** as officers, members, directors and shareholders, as applicable, **of RDV and SMA prior to the date hereof in connection with the Lawsuit, and any other actions taken after the date hereof to effect the purposes detailed in this Agreement** that are within the authority conferred in the organizational documents of such entities (or to the extent not conferred by such documents, but could have been conferred or can be conferred by such documents with a vote of Bocra, Story [sic] and Schroeder) **are hereby ratified, confirmed and approved as the proper acts and deeds of RDV and SMA.**

Ex. 17, Bocra-3, p. 2 (emphasis added).  Skoop, Rendezvoo, Bocra, Schroeder and Stroy were all parties to the Agreement of Interest in Lawsuit. *Id.*; Ex. 3, Bocra May 19, 2016 Dep., p. 156:7-11.

Q. Can you describe in any way the documents that you believe Mr. Schroeder signed without authorization?

A.   I can't tell you specifically.

Q. Can you tell me when Mr. Schroeder signed these documents without authorization?

A.   I don't have any specific dates.

Q.   Can you give me a year?

A.   ***I'm not sure of the year.***

Ex. 2, Cohen May 16, 2016 Dep., p. 13:2-20 (emphasis added).  Even if Cohen could identify some document that he alleges Schroeder improperly signed so that Skoop could sue and/or continue to sue Cohen, Cohen's allegation is without merit.  As discussed above, Skoop's disinterested directors formally ratified the actions Schroeder undertook on Skoop's behalf in order to pursue its lawsuit against Cohen, which would necessarily include the ratification of any documents Schroeder signed in order to pursue the litigation on Skoop's behalf. Ex. 17 (Ex. Bocra 3 (Agreement of Interest in Lawsuit)), ¶4.  Moreover, since the Pinterest Litigation commenced, Skoop has participated in the Pinterest Litigation by receiving and responding to Cohen's discovery disputes and responding to various pleadings.

Finally, it is important to note that there is no evidence to show that Schroeder used Skoop as a mere artifice to benefit himself and there are no allegations that he siphoned or comingled any Company funds.  Cohen admitted that he was not aware of any instance where Schroeder used Skoop's funds to pay for his personal expenses.  Ex. 2, Cohen May 16, 2016 Dep., p. 24:16-23.  Cohen was not aware of any instance in which Mr. Schroeder "pocketed money" that belonged to Skoop.  *Id.* at p. 24:24-25:3.  Cohen was not aware of any transfer of Skoop's assets and no instance where Schroeder improperly transferred Skoop's assets.  *Id.* at 25:4-11.  Further, Cohen testified that he did not know what a fraud is and could not identify

Page **14** of **21**

anything that Skoop did that was fraudulent.  *Id.* at 21:3-22:17.  Finally, Cohen admitted that there never came a time when Schroeder made all the decisions for Skoop and he does not know if Schroeder makes all of Skoop's decision today.  *Id.* at 29:12-20, 30:5-9.

Bereft of any such knowledge of actual wrongdoing by Schroeder, Cohen nevertheless brought this action against Schroeder, having fully admitted that he did so not based on legitimate claims of manipulation of the corporate form, but out of spite hoping to use the instant litigation to pressure Schroeder to force Skoop to give up the Pinterest Litigation.

## III.   ARGUMENT

### A.   Legal Standard for Summary Judgment

The standard for Summary Judgment is well established:

> Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

*Wellington Shields & Co., LLC v. Breakwater Investment Management LLC*, No. 14-cv-7529 (S.D.N.Y. March 18, 2016) (Sullivan, J.).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996).

4130345v1

Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn." *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. Thus, summary judgment is proper "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Estate of Gustafson v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016) *quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[F]ederal courts sitting in diversity apply state substantive law ...." *RSL Communications PLC v. Bildirici*, 649 F. Supp.2d 184, 197 (S.D.N.Y. 2009) (Sullivan, J.), *quoting Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The parties have previously agreed that Delaware substantive law applies in this case. *See* Opinion and Order dated March 15, 2016 (D.E. 54), p. 4. Delaware laws appropriately applies to this case, as Plaintiff, the former Chairman and CEO of a Delaware corporation (Skoop), seeks to pierce the corporate veil of this Delaware corporation to enforce his Delaware Judgment.

## B.   Law Supporting Summary Judgment

Plaintiff's burden of proof is very high and the facts simply come nowhere near showing that the relief sought is appropriate. Simply put, to pierce a corporate veil, the defendant must have had "complete domination and control over the entity such that it no longer has legal or

independent significance of its own." *Carotek, Inc. v. Kobayashi Ventures, LLC*, 875 F. Supp.2d 313, 359 (S.D.N.Y. 2012). The undisputed facts in this case establish that this is not true.

The Court previously set forth the legal standard necessary to pierce Skoop's veil in its March 15, 2016 Opinion and Order:

> Under Delaware law – which both parties agree applies here – "a court may impose personal liability on a corporation's owner when there is fraud or the corporation 'is in fact a mere instrumentality or alter ego of its owner.'" *Wilson v. Thorn Energy, LLC*, 787 F. Supp. 2d 286, 294 (S.D.N.Y. 2011) (quoting *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008) (applying Delaware law)). To establish an alter-ego claim, Delaware law requires a plaintiff to show: "(1) that the business entity and its owner operated as a single economic entity and (2) that [there was] an overall element of injustice or unfairness." *NetJets Aviation, Inc.*, 537 F.3d at 174 (alteration in original) (citation omitted). In determining whether a plaintiff has established an alter-ego claim, courts applying Delaware law generally start their analysis "with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation." *Id.* at 176-77 (citation omitted). These factors include:
>
> > whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.
>
> *Id.* at 177 (citation omitted). While "no single factor c[an] justify a decision to disregard the corporate entity, ... some combination of them [i]s required, and . . . an overall element of injustice or unfairness must always be present, as well." *Harper v. Del. Valley Broads., Inc.*, 743 F. Supp. 1076, 1085 (D. Del. 1990), *aff'd*, 932 F.2d 959 (3d Cir. 1991) (citation omitted); *see also NetJets Aviation, Inc.*, 537 F.3d at 177 ("numerous factors come into play when discussing whether separate legal entities should be regarded as alter egos, . . . and the legal test for determining when a corporate form should be ignored in equity cannot be reduced to a single formula that is neither over-nor under-inclusive" (citations and alterations omitted)). In general, the "inquiry initially focuses on whether those in control of a corporation did not treat the corporation as a distinct entity; and, if they did not, the court then seeks to evaluate the specific facts with a standard of 'fraud' or 'misuse' or some other general term of reproach in mind, . . . such as whether the corporation was used to engage in conduct that was inequitable, . . . prohibited, . . . or illegal." *NetJets Aviation, Inc.*, 537 F.3d at 177 (alterations and

Page **17** of **21**

citations omitted). "Simply phrased, the standard may be restated as: whether [a company and those in control of it] operated as a single economic entity such that it would be inequitable for [a] [c]ourt to uphold a legal distinction between them." *Harper*, 743 F. Supp. at 1085 (first alteration in original) (citation omitted). Moreover, a "plaintiff need not prove that the corporation was created with fraud or unfairness in mind. It is sufficient to prove that it was so used." *NetJets Aviation, Inc.*, 537 F.3d at 177 (citing examples).

Opinion and Order dated March 15, 2016 (D.E. 54), p. 4-6.

As discussed in more detail below Cohen cannot establish the either of the elements necessary to pierce Skoop's corporate veil. First, he cannot establish that Skoop and Schroeder "operated as a single economic entity." Second, he cannot establish the failure to pierce Skoop's corporate veil would be an injustice or somehow unfair. Cohen's inability to establish both of these elements is fatal to Cohen's claim.

First, there can be no question that Skoop had and continues to have a legal and independent significance of its own apart from Schroeder. Indeed, Cohen himself conceded that Skoop was "a real legal entity" when he sued it and that it remains a legal entity today. Ex. 2, Cohen May 16, 2016 Dep., p. 30:21-24, 31:14-16. Skoop was never used for Defendant's own purposes and there are no allegations that Schroeder siphoned or comingled any Company funds. Simply put, there is no evidence in the record taken as a whole from which a rational trier of fact could reasonable conclude that Skoop and Schroeder "operated as a single economic entity."

To the contrary, the record demonstrates that Skoop's directors, officers and shareholders continue to prosecute a case to protect SMA's intellectual property. Bocra and Stroy (the other directors and shareholders) specifically agreed to Skoop's prosecution of the lawsuit against Plaintiff. Additionally, in October 2014, Defendant, Bocra and Stroy gave their written ratification for all prior decisions and actions to pursue the Pinterest Litigation.

4130345v1

While Cohen may argue that Bocra did not authorize the filing of Skoop's original complaint when it was first filed in late February 2013, it is undisputed that he was aware of the litigation at the time, he did not object to the suit, and he subsequently ratified that filing and any other acts necessary to prosecute the case against Cohen. During discovery, Cohen attempted to raise a fuss over the fact that Bocra did not sign the written ratification contained in the Agreement of Interest in Lawsuit until October 2014. This fact, however, does not establishing that Skoop was Schroder's alter ego. Rather, since Bocra only signed the Agreement of Interest in Lawsuit after some negotiation, this reinforces the fact that Skoop was a real entity and that its shareholders and directors were not mere puppets following the Schroeder's dictates.

Even if the filing of the lawsuit had not been ratified, as Skoop's President, Schroeder had the authority to take the actions needed to protect SMA's interests. The Third Circuit interpreting Delaware law found that Delaware courts have held that to the extent that the president has authority to take general and active control of the corporation's business and affairs, "the president as general manager commands the power to 'do anything the corporation could do in the general scope and operation of its business.'" *Schoonejongen v. Cucriss-Wright Corp.*, 143 F.3d 120, 128 (3d Cir. 1998) (quoting *Phoenix Finance Corp. v. Iowa-Wisconsin Bridge Co.*, 16 A.2d 789, 793 (Del. Super. Ct. 1940)). Indeed, as this Court rightly pointed out, "if Cohen turns out to be the crook that he's alleged to be, then it probably would be a breach of fiduciary duty if Schroeder didn't get the company to join the case, to the extent that they have claims against Cohen." Tr. June 1, 2016 Hearing, p. 3:18-21.

The three allegations of "unusual activities" that Cohen has lodged are without merit. First, as set forth in detail above, Schroeder did not pay Skoop's taxes. But even if he had, that action would not have been "unusual," much less fraudulent. Indeed, since Skoop was without

4130345v1

cash assets to pay its taxes, as Skoop's largest shareholder and the person with the most to ultimately gain from any recover in the Pinterest Litigation, Schroeder would have been a logical person to advance most, if not all, the funds necessary to ensure that Skoop remained in compliance with its legal obligations. There simply is no evidence from which a rational trier of fact could determine that the payment of Skoop's taxes legally due and owing to the State of Delaware constituted a fraud.

Second, Cohen's "unusual activity" claim that Schroeder improperly authorized the lawsuit on behalf of Skoop is both meritless and irrelevant.  As detailed above, Cohen's argument is meritless because (1) Schroeder as Skoop's President had inherent authority to file the lawsuit; (2) the filing of the lawsuit was approved without objection by a majority of the disinterested directors and shareholders; and, (3) the filing of the lawsuit was ratified in writing by all the disinterested directors and shareholders.  Cohen's argument is also irrelevant, as it is undisputed that the Company's current position is that the Pinterest Litigation is in its best interest.  Cohen, the only person complaining about the lawsuit, is hopelessly conflicted.

Third, Cohen's "unusual activity" claim that there were signatures or names on corporate forms without authorization if both meritless and irrelevant for the reasons set forth in the paragraph above.

Finally, assuming *arguendo* that Cohen had evidence sufficient to create a genuine issue of material fact regarding Skoop and Schroeder "operat[ing] as a single economic entity," in order to avoid summary judgment Cohen would still have to establish that any injustice or unfairness would result from not allowing him to pierce Skoop's corporate veil.  Additionally, to pierce the corporate veil under Delaware law, the fraud or injustice complained of "must 'be found in the defendants' use of the corporate form.'"  *Trevino v. Merscorp, Inc.*, 583 F. Supp.2d

521, 530 (D. Del. 2008) quoting *In re Foxmeyer Corp.,* 290 B.R. 229, 236 (D. Del. Bankr. 2003). Cohen has failed to prove any injustice, much less an injustice in Schroeder's alleged use of Skoop's corporate form.   As an initial matter, Cohen first argued that Skoop, not Schroeder, owned the claims at interest.   Thus, Cohen's actions precipitated Skoop joining in the Pinterest Litigation.   Second, Cohen initiated the Delaware Action knowing that Skoop had no money or insurance with which to pay any judgment he obtained.   *See* Compl., ¶ 2; Ex. 10 (Ex. Cohen 36), ¶63).   Third, Cohen still retains all of his remedies against Skoop arising from the Delaware Judgment.   Cohen, however, has failed to fully exercise these remedies.   Fourth, the Delaware courts have held that the possibility that a plaintiff, like Cohen, may have difficulty enforcing a judgment is not an injustice warranting piercing the corporate veil.   *See Trevino*, 583 F. Supp.2d at 530.   Fifth, Cohen is not a third party who was tricked into doing business with Skoop. Instead, he was an insider who helped found the Company and served as the Company's Chairman and CEO.   Finally, there is simply no evidence of fraud by Schroeder.   Consequently, no extraordinary circumstances exist in this case for piercing the veil such that a rational trier of fact could find in Cohen's favor.

## IV.   **CONCLUSION**

For all the reasons set forth above, defendant Theodore F. Schroeder respectfully requests that the Court enter summary judgment in his favor and against Plaintiff Brian S. Cohen.

New York, New York
July 11, 2016

**MONTGOMERY McCRACKEN
WALKER & RHOADS LLP**

By:   _/s/ Sidney S. Liebesman_
Sidney S. Liebesman
David Dormont (Pro Hac Vice)
437 Madison Avenue, 29th Fl.
New York, NY 10022
Tel: (212) 867-9500

4130345v1